UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GRAY & ASSOCIATES, LLC in its capacity :
As Trustee on behalf of the SVCMC :
Litigation Trust, :                              08 CV 4401 (AKH)
 :
                              Plaintiff, :
 :                                               ECF Case
                    v. :
 :
MCDERMOTT WILL & EMERY LLP, :
WILLIAM P. SMITH, STEPHEN B. SELBST, :
and DAVID D. CLEARY, :
 :
                              Defendants. :
 :
------------------------------------------------------------X


# REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

Frederick B. Warder III
Evan Mandel
PATTERSON BELKNAP WEBB
       & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendants
McDermott Will & Emery LLP,
William P. Smith, Stephen B. Selbst
and David D. Cleary

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................ 1

DISCUSSION ....................................................................................................................... 3

I.   THE RESERVATION CLAUSE CONTAINED IN THE REORGANIZATION PLAN
DOES NOT DIMINISH THE *RES JUDICATA* EFFECT OF THE FEE JUDGMENT ....... 3

A. The Case Law Does Not Permit a Reservation Clause in a Reorganization Plan To
Diminish the *Res Judicata* Effect of a Separate Judgment ............................................... 3

B. Federal Bankruptcy Law Does Not Permit a Reservation Clause in a Reorganization
Plan To Diminish the *Res Judicata* Effect of a Separate Judgment................................... 7

II.   THE BANKRUPTCY COURT'S FEE JUDGMENT DOES NOT PRECLUDE THE
OPERATION OF *RES JUDICATA* IN THIS CASE.............................................................. 10

A. The Bankruptcy Court Did Not Limit the *Res Judicata* Effect of the Fee Judgment..... 10

B. The Bankruptcy Court Could Not Limit the *Res Judicata* Effect of the Fee Judgment . 14

1.   The Second Circuit Has Held That Bankruptcy Courts Are Powerless To Limit
the *Res Judicata* Effect of Their Own Judgments ................................................. 14

2.   The Cases Cited by the Litigation Trustee Do Not Permit the Bankruptcy Court
To Limit the *Res Judicata* Effect of Its Own Judgment ........................................ 16

3.   The Policy Rationale for the *Res Judicata* Doctrine Precludes Case-Specific
Exceptions to the Doctrine...................................................................................... 17

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

Albenga v. Ward,
  635 F.Supp. 660 (S.D.N.Y. 1986) ................................................................18

Amarex, Inc. v. Marathon Oil Co. (In re Amarex, Inc.),
  74 B.R. 378 (Bankr. W.D. Okla. 1987), aff'd, 88 B.R. 362 (W.D. Okla. 1988)............7

Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.,
  48 F.3d 576 (1st Cir. 1995).......................................................................16

Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs.),
  162 B.R. 426 (Bankr. S.D.N.Y. 1993)........................................................4, 9

Covanta Onondaga Ltd. P'ship v. Onondaga County Res. Recovery Agency,
  318 F.3d 392 (2d Cir. 2003)........................................................................15

D.A. Elia Constr. Corp. v. Damon & Morey, LLP (In re D. A. Elia Constr.),
  No. 07-CV-143A, 2008 U.S. Dist. LEXIS 25496 (W.D.N.Y. Mar. 31, 2008)..............6

D&K Props. Crystal Lake v. Mutual Life Ins. Co. of N.Y.,
  112 F.3d 257 (7th Cir. 1997) ................................................................4, 5, 9

Eastern Airlines, Inc. v. Brown & Williamson Tobacco Corp. (In re Ionosphere),
  262 B.R. 604 (Bankr. S.D.N.Y. 2001)........................................................4, 5

Federated Dep't Stores, Inc. v. Moitie,
  452 U.S. 394 (1981)............................................................................17, 18

Goodman Bros. Steel Drum Co. v. Liberty Mutual Ins. Co. (In re Goodman Bros.
  Steel Co.), 247 B.R. 604 (Bankr. E.D.N.Y. 2000).......................................10

Grausz v. Englander,
  321 F.3d 467 (4th Cir. 2003) ..................................................................5-6

Harstad v. First Am. Bank,
  39 F.3d 898 (8th Cir. 1994) ......................................................................9

Iannochino v. Rodolakis (In re Iannochino),
  242 F.3d 36 (1st Cir. 2001).......................................................................6

Kmart Corp. v. Intercraft Co. (In re Kmart Corp.),
  310 B.R. 107 (Bankr. N.D. Ill. 2004) .....................................................3-4

Liu v. Silverman (In re Liu),
    No. 94-40970 (ALG), 2001 Bankr. LEXIS 547
    (Bankr. S.D.N.Y. May 23, 2001)...............................................................5

Maxwell Commc'n Corp. v. Societe Generale,
    93 F.3d 1036 (2d Cir. 1996)...................................................................10

Midway Motor Lodge of Elk Grove v. Innkeepers' Telemgmt. & Equip. Corp.,
    54 F.3d 406 (7th Cir. 1995) ...................................................................16

Osherow v. Ernst & Young, LLP (In re Interlogic Trace, Inc.),
    200 F.3d 382 (4th Cir. 2003) ...............................................................5, 6

In re Palumbo Family Ltd. P'ship,
    182 B.R. 447 (Bankr. E.D. Va. 1995).......................................................16

Parker v. Blauvelt Volunteer Fire Co., Inc.,
    93 N.Y.2d 343, 690 N.Y.S.2d 478 (1999) ...............................................17

Schmieder v. Hall,
    545 F.2d 768 (2d Cir. 1976)...................................................................19

Shaw v. Replogle (In re Shaw),
    No. C. 00-2820 CRB, 2000 U.S. Dist. LEXIS 18745
    (N.D. Cal. Dec. 22, 2000) ................................................................ 18-19

Sure-Snap Corp. v. State Street Bank & Trust Co.,
    948 F.2d 869 (2d Cir. 1991)...................................................14, 15, 19

Thickstun Bros. Equip. Co. v. Encompass Serv. Corp. (In re Thickstun Bros.
    Equip. Co., Inc.), 344 B.R. 515 (6th Cir. 2006)...................................... 15-16

## STATUTES

11 U.S.C. § 1123...........................................................................................7, 16

Fed. R. Bankr. 7001 (2007 version) ...............................................................8

## MISCELLANEOUS

7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy § 1123.02[3][b]
    (15th ed. rev. 2005)..............................................................................9

# PRELIMINARY STATEMENT

The Litigation Trustee[1] does not dispute that the MWE Defendants have established all of the elements of their *res judicata* defense. The Litigation Trustee in no way suggests that Saint Vincent and the Creditors Committee were unaware of the instant claims at the time of the fee dispute, and does not dispute that the instant claims were or could have been raised before the Bankruptcy Court during the fee dispute. Instead, the Litigation Trustee argues that *res judicata* does not bar the instant claims because those claims were reserved in the Reorganization Plan and in the Bankruptcy Court's Fee Order and Fee Decision (collectively, the "Fee Judgment"). Both arguments fail.

First, the reservation clause of the Reorganization Plan does not and cannot determine the *res judicata* effect of the Fee Judgment. There is no precedent to support the proposition that a reservation contained in a reorganization plan in any way governs the *res judicata* effect of a subsequent final judgment that is separate from the reorganization plan. In fact, case law relied upon by the Litigation Trustee holds that a judgment issued by a bankruptcy court that is separate from a reorganization plan is *res judicata* as to claims that were or could have been brought before the bankruptcy court even though the claims at issue were covered by a reservation clause contained in the reorganization plan.

Second, the Fee Judgment did not preserve the instant claims. Before the Fee Judgment was issued, the Bankruptcy Court made clear that it would express no opinion on the *res judicata* effect of its own judgment, especially in the absence of briefing and argument. In the Fee Judgment itself, the Bankruptcy Court observed that no malpractice or similar claims had

---

[1] All capitalized terms have the definitions stated in the MWE Defendants' opening brief, dated May 15, 2008.

been filed by Saint Vincent, and ordered that its ruling did not address any such claims—or defenses to such claims—that might be asserted in the future. Even if the Bankruptcy Court had intended affirmatively to preserve the instant claims in its Fee Judgment, the Second Circuit has held that the Bankruptcy Court lacked the power to determine the *res judicata* effect of its own judgment.

It is hard to imagine a more appropriate case for *res judicata* than the instant one. During the fee dispute, Saint Vincent and the Creditors Committee (1) were aware of the facts underlying all of their alleged claims, (2) were represented by no fewer than four different law firms, one of which—Venable LLP—had been hired expressly to advise Saint Vincent about potential claims against the MWE Defendants, (3) were specifically told by the MWE Defendants that *res judicata* would bar any malpractice claims that were not raised during the fee dispute, (4) were represented by counsel who had concluded that, in order to protect itself, Saint Vincent should file its malpractice claims during the fee dispute, (5) investigated and conducted discovery on the instant claims, (6) conducted a trial in which evidence (including written testimony from ten witnesses spanning 109 pages, live testimony from six witnesses, and extensive oral argument on the merits as well as on numerous evidentiary issues) was presented on the same transaction, and (7) elected not to litigate the instant claims during the fee dispute. The second bite at the apple now sought by the Litigation Trustee is expressly forbidden by the doctrine of *res judicata* and, if permitted, would encourage parties to split claims based on the same facts into multiple lawsuits, thereby wasting the resources of the parties and the judicial system.

## DISCUSSION

**I.    THE RESERVATION CLAUSE CONTAINED IN THE REORGANIZATION
PLAN DOES NOT DIMINISH THE *RES JUDICATA* EFFECT OF THE FEE
JUDGMENT**

The Litigation Trustee and the MWE Defendants agree that reorganization plans

confirmed by bankruptcy courts are final orders that have *res judicata* effect.  (See Defendants'

Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 19;

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") at

28-29.)  The parties also agree that, in certain cases, a sufficiently clear and specific reservation

clause contained in a reorganization plan prevents the reorganization plan from having a *res

judicata* effect that would bar the reserved claims from being pursued later.  (See Pl. Opp. at 29-

30.)  The Litigation Trustee takes this principle one step further and asserts that a reservation

clause contained in a reorganization plan prevents final judgments other than the reorganization

plan from having *res judicata* effect.  (Pl. Opp. at 27-33.)  This assertion has no legal support, is

inconsistent with the purpose and letter of the relevant federal bankruptcy statute, and lacks any

rational basis.

**A.    The Case Law Does Not Permit a Reservation Clause in a Reorganization
Plan To Diminish the *Res Judicata* Effect of a Separate Judgment**

With one exception, none of the cases relied upon by the Litigation Trustee

addresses the question of whether a reservation clause contained in a reorganization plan

prevents a final judgment other than the reorganization plan from having a *res judicata* effect.

Instead, with one exception, the cases cited by the Litigation Trustee address the issue of how a

reservation clause impacts the *res judicata* effect of the reorganization plan itself as opposed to

some other final judgment.  See Kmart Corp. v. Intercraft Co. (In re Kmart Corp.), 310 B.R. 107,

3

119 (Bankr. N.D. Ill. 2004) ("Here, the Defendants argue that the avoidance claims in these

preference complaints are barred by the *res judicata* effect of the Confirmation Order."); Eastern

Airlines, Inc. v. Brown & Williamson Tobacco Corp. (In re Ionosphere), 262 B.R. 604, 613

(Bankr. S.D.N.Y. 2001); Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs.), 162 B.R.

426, 432-33 (Bankr. S.D.N.Y. 1993) ("We move on to [defendant's] *res judicata* argument. . . .

The argument [is] that the confirmed plan is *res judicata*, precluding this preference action.").

      The one case cited by the Litigation Trustee that actually addresses the question at

issue in this motion—whether a reservation clause contained in a reorganization plan impacts the

*res judicata* effect of a final judgment other than the reorganization plan itself—unequivocally

supports a finding of *res judicata* in this case.  In D&K Properties Crystal Lake v. Mutual Life

Insurance Co. of New York, 112 F.3d 257 (7th Cir. 1997), the bankruptcy court confirmed a

reorganization plan that contained reservation language.  Id. at 259.  The bankruptcy court also

held a hearing on an action by the debtor alleging that a mortgage lender had improperly

increased the interest rate on a mortgage loan.  Id. at 258-59.  The court rejected the debtor's

action, and issued an order allowing the mortgage lender's secured claim.  Id. at 259.  Thereafter,

the debtor filed another action against the mortgage lender, this time alleging that the lender's

increase of the interest rate constituted a bad faith breach of the loan agreement.  Id.  The

Seventh Circuit held that even if the reorganization plan's reservation clause had permitted the

subsequent complaint, the separate order issued by the bankruptcy court allowing the mortgage

lender's claim barred the debtor's subsequent complaint:  "Even if we had determined that [the

relevant section of the reorganization plan] reserved this cause of action, an alternative *res

judicata* bar to [debtor's] claim arises from the May 31, 1994 order allowing [the mortgage

lender's] secured claim." Id. at 262 n.4. The Seventh Circuit thereby held that a reservation

clause in a reorganization plan does not prevent a separate order from barring the reserved claim.

In short, there is no precedent supporting the proposition that a reservation clause

contained in a reorganization plan in any way alters or interferes with the *res judicata* effect of

another final judgment, and the mere fact that a clause in a reorganization plan preserves certain

claims in no way prevents a separate final order from having a *res judicata* effect barring those

same claims. See Eastern Airlines, 262 B.R. at 613 (determining that a cause of action was not

otherwise "addressed or adjudicated by any court" before concluding that a reservation clause

contained in a reorganization plan effectively preserved the cause of action); Liu v. Silverman

(In re Liu), No. 94-40970 (ALG), 2001 Bankr. LEXIS 547, at *25 (Bankr. S.D.N.Y. May 23,

2001) ("In addition to the fact that the final order settling [a state court action] is preclusive of

the Debtors' attempt to sue both the Trustee and the Trustee's counsel . . . there is also substantial

authority that **the award of attorney's fees** to [an attorney who represented the debtor prior to

the filing of the bankruptcy petition and the trustee after the filing of the bankruptcy petition]

precludes a malpractice claim against him.") (emphasis added).

Further, the numerous courts that have held that a bankruptcy court's ruling on a

professional's fee application is *res judicata* as to any subsequent malpractice claim by the debtor

have made clear that the fee order—as opposed to the reorganization plan—is the final judgment

that is relevant for purposes of determining whether *res judicata* applies.[2] See, e.g., Grausz v.

---

[2] The Litigation Trustee asserts that the cases cited in the MWE Defendants' opening brief finding a bankruptcy court fee judgment *res judicata* as to subsequent malpractice claims "have nothing to do with provisions in confirmed reorganization plans." (Pl. Opp. at 41.) In fact, in Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003), and Osherow v. Ernst & Young, LLP (In re Interlogic Trace, Inc.), 200 F.3d 382 (5th Cir. 2000), the reorganization plans confirmed by the bankruptcy court contained reservation clauses purporting to reserve claims that were resolved by the fee judgment. See Joint Plan of Liquidation § 9.04, In re Henry Grausz, M.D., No. 97-24657-PM (Bankr. D. Md. Oct. 29, 1999); Modified First Amended

Englander, 321 F.3d 467, 471, 475 (4th Cir. 2003) ("The [law firm defendant] filed a motion to

dismiss . . . on the ground that under *res judicata* principles the bankruptcy court's **final fee**

**order** (approving fees for the [law firm defendant]) barred the malpractice claim. . . . [W]e hold

that [plaintiff-debtor's] legal malpractice claim is barred by the **final fee order** in the bankruptcy

case.") (emphasis added); Iannochino v. Rodolakis (In re Iannochino), 242 F.3d 36, 38 (1st Cir.

2001) ("We decide here whether **an award of fees in bankruptcy** to a debtor's attorney will act

as a bar under claim preclusion principles to a later suit filed by the debtor alleging professional

malpractice arising from the bankruptcy representation.") (emphasis added); Osherow v. Ernst &

Young, LLP (In re Interlogic Trace, Inc.), 200 F.3d 382 (5th Cir. 2000) (analyzing whether

malpractice claim was barred because debtor failed to raise it during a fee application

proceeding); D.A. Elia Constr. Corp. v. Damon & Morey, LLP (In re D. A. Elia Constr.), No. 07-

CV-143A, 2008 U.S. Dist. LEXIS 25496, at *9-17 (W.D.N.Y. Mar. 31, 2008) (analyzing

whether an October 19, 2004 order adjudicating a law firm's final fee application satisfied the

elements of a *res judicata* defense).

      The cases unequivocally support the proposition that a reservation clause

contained in a reorganization plan in no way diminishes or disturbs the *res judicata* effect of a

judgment that is separate from the reorganization plan. The MWE Defendants' instant motion to

dismiss is based exclusively on the *res judicata* effect of the Fee Judgment. As a result, the

reservation clause contained in the Reorganization Plan is irrelevant to this motion.

---

Chapter 11 Plan § 12.4, In re Interlogic Trace, Inc., No. 94-52172C (Bankr. W.D. Tex. Oct. 12, 1994). In these two cases, despite the existence of a reservation clause, the debtors did not assert the legally baseless argument asserted by the Litigation Trustee in this case—i.e., that a reservation clause contained in a reorganization plan neutralizes the *res judicata* effect of a separate and distinct judgment.

**B.**    **Federal Bankruptcy Law Does Not Permit a Reservation Clause in a Reorganization Plan To Diminish the *Res Judicata* Effect of a Separate Judgment**

Federal bankruptcy law further undermines the Litigation Trustee's assertion that a reservation clause contained in a reorganization plan governs the *res judicata* effect of a final judgment separate from the reorganization plan. The purpose of the Bankruptcy Code provision permitting a bankruptcy court to include a reservation of claims in a reorganization plan, 11 U.S.C. § 1123, is to ensure that the confirmation of the reorganization plan is not delayed by claims that may take longer to litigate. The parties agree that Amarex, Inc. v. Marathon Oil Co. (In re Amarex, Inc.), 74 B.R. 378 (Bankr. W.D. Okla. 1987), aff'd, 88 B.R. 362 (W.D. Okla. 1988), correctly identifies the purpose of Section 1123:

> [Section] 1123(b)(3)(B) serves the useful function of allowing confirmation of a plan before possible claims against others have been fully investigated and pursued. To say confirmation must await a final decision of all possible preference complaints would either inordinately delay confirmation, with all the attendant expense, or result in a windfall in favor of those who received preferential transfers. Id. at 380 (cited at Pl. Opp. at 30 n.5).

However, the fact that Congress authorized bankruptcy courts to include reservation clauses in reorganization plans so that bankruptcy courts can confirm such plans prior to the resolution of all of a debtor's claims in no way suggests that a debtor should be able to re-litigate a transaction that was litigated before the bankruptcy court. In those cases where the debtor has investigated, conducted discovery on, litigated, and obtained a final judgment from the bankruptcy court on claims based on a common transaction, a reservation clause that purports to preserve some or all of those claims serves absolutely no purpose.[3] In such a case,

---

[3] Saint Vincent itself has suggested that a debtor's objection to a fee application automatically becomes an adversary proceeding when the debtor submits a claim for affirmative relief along with the objections.

the debtor's litigation of the claims and the bankruptcy court's adjudication of the claims does not

prevent the orderly and expeditious confirmation of a reorganization plan. Instead, distributions

are maximized and the amount of time it takes to make the distributions to creditors is

minimized.

       This is precisely such a case. Here, Saint Vincent asserted objections to MWE's

fee application, requested that the Bankruptcy Court award it consequential damages by way of a

fee set-off, conducted discovery on the adequacy of the MWE Defendants' services and the harm

they ostensibly caused, and submitted extensive evidence and argument before, during, and after

the trial. Saint Vincent's objections and request for consequential damages were ruled upon in

the Fee Judgment. The adjudication of MWE's Fee Application and Saint Vincent's objections

and request for damages in no way delayed the confirmation of the Reorganization Plan and, as a

result, there was no reason consistent with congressional intent underlying Section 1123 for the

Bankruptcy Court to preserve Saint Vincent's malpractice claims past the point in time that the

Fee Judgment was issued.

       In fact, Saint Vincent's malpractice claims had to be reserved in the

Reorganization Plan so that the Bankruptcy Court could rule on them in the Fee Judgment. If a

debtor does not expressly reserve a claim in the reorganization plan that has accrued at the time

---

See Opening Brief of Cross-Appellants Saint Vincents Catholic Medical Centers of New York and
Creditors' Committee of Saint Vincents Catholic Medical Centers of New York, McDermott Will &
Emery LLP v. Saint Vincents (In re Saint Vincents), 07-cv-9818 (AKH), Docket Entry # 9 (hereinafter,
"Saint Vincent Fee Appeal Br.") (quoting Osherow v. Ernst & Young, LLP (In re Interlogic Trace, Inc.),
200 F.3d 382, 389-90 (5th Cir. 2000), for this proposition); see also Fed. R. Bankr. 7001 (2007 version)
(when an objection to a claim is filed along with certain types of requests for affirmative relief, it
becomes an adversary proceeding). If the fee dispute between Saint Vincent and MWE became an
adversary proceeding, the Litigation Trustee's argument that the Reorganization Plan issued in the
Chapter 11 case should neutralize the res judicata effect of the adversary proceeding would be all the
more illogical.

the reorganization plan is confirmed, the debtor is precluded from pursuing the claim. See, e.g., Harstad v. First Am. Bank, 39 F.3d 898, 903 (8th Cir. 1994); accord 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy § 1123.02[3][b] (15th ed. rev. 2005); Bonwit Teller, 162 B.R. at 432-34. At the time the Reorganization Plan was confirmed on July 27, 2007, the trial on the debtor's fee dispute with MWE had already occurred, but the Bankruptcy Court had not yet issued a decision. The fact that the Reorganization Plan included a reservation clause does not mean that claims that were or could have been litigated in the fee dispute would survive the final judgment in the fee dispute.

Finally, the Litigation Trustee's assertion that this motion to dismiss constitutes an impermissible collateral attack on the Reorganization Plan (Pl. Opp. at 33-34) is a red herring. The MWE Defendants are not asserting that the Reorganization Plan bars the Trustee's Complaint, and are in no way attacking the language in the Reorganization Plan preserving claims.[4] This motion is based exclusively upon the *res judicata* effect of the Fee Judgment, which constitutes a final judgment that is entirely separate from the Reorganization Plan for purposes of *res judicata*. See D&K Props. Crystal Lake, 112 F.3d at 262 n.4. The reservation clause contained in the Reorganization Plan is irrelevant to the instant motion.

---

[4] The Litigation Trustee makes much out of the fact that the MWE Defendants never objected to the Reorganization Plan. (See, e.g., Pl. Opp. at 2, 22, 32, 34.) At the time the Reorganization Plan was confirmed on July 27, 2007, the Bankruptcy Court had not ruled on MWE's Fee Application and, as a result, the MWE Defendants knew that, at some point in the future, the Bankruptcy Court would be issuing a final judgment on the Application. The MWE Defendants did not object to the Reorganization Plan's reservation clause because they never believed that the Reorganization Plan would have any impact on the *res judicata* effect of the Fee Judgment that was to be issued at some point in the future by the Bankruptcy Court. The MWE Defendants' position on this issue was made clear to Saint Vincent and the Creditors Committee prior to the July conference, during which Saint Vincent's counsel acknowledged that MWE had "taken the position that [the court's] **ruling on the final fee application** [ ] will, in fact, result in a release of all pre-petition claims that the estate may have against McDermott." (Tele. Conf. Tr. at 9:5-8, Def. Exh. E (emphasis added).)

Cases cited by the Litigation Trustee in support of its argument that the instant motion constitutes a collateral attack on the Reorganization Plan are inapposite because they address the *res judicata* effect of reorganization plans as opposed to the *res judicata* effect of a judgment other than reorganization plans. See, e.g., Maxwell Commc'n Corp. v. Societe Generale, 93 F.3d 1036, 1044-46 (2d Cir. 1996) ("For all these reasons, the confirmation order, binding though it may be, does not preclude the banks from seeking dismissal of [plaintiff's] complaints."); Goodman Bros. Steel Drum Co. v. Liberty Mutual Ins. Co. (In re Goodman Bros. Steel Co.), 247 B.R. 604 (Bankr. E.D.N.Y. 2000) (analyzing the *res judicata* effect of a reorganization plan that did not contain a reservation clause).

## II.    THE BANKRUPTCY COURT'S FEE JUDGMENT DOES NOT PRECLUDE THE OPERATION OF *RES JUDICATA* IN THIS CASE

The Litigation Trustee argues in the alternative that the instant Complaint is not barred by *res judicata* because the Bankruptcy Court's Fee Judgment preserved malpractice and similar claims. The Litigation Trustee is mistaken.

### A.    The Bankruptcy Court Did Not Limit the *Res Judicata* Effect of the Fee Judgment

The Bankruptcy Court did not preserve the claims in the Litigation Trustee's Complaint in the Fee Judgment. As discussed in detail in the MWE Defendants' initial brief, the issue of whether the doctrine of *res judicata* would bar Saint Vincent from pursuing malpractice claims that were not raised during the fee proceeding arose very early in the fee dispute and was the subject of a July 20, 2006 conference held by the Bankruptcy Court. During that conference, McDermott made clear its position that *res judicata* would bar any malpractice claim that was

not asserted during the fee dispute and the Bankruptcy Court made clear that, at least in the

absence of briefing and argument, it was not going to take a position on the issue:

> Now, as far as the question of whether or not a ruling on a final fee
> application bars claims, I haven't the slightest idea what the
> outcome of that controversy is and I don't express any opinion on
> it. So you can all proceed on the basis that I don't know anything
> about the answer to that question. It hasn't been put before me and
> I express no view. (Tele. Conf. Tr. at 18:18-24, Def. Exh. E.)

The Bankruptcy Court specifically recommended that the parties obtain legal advice on the issue

and indicated that the parties should brief the issue before the Court would consider addressing

it. (Id. at 19:9-11.) Saint Vincent's counsel stated during that conference that it was in Saint

Vincent's best interests to file any and all malpractice claims at the time of the fee dispute, and its

counsel presumably related this advice to Saint Vincent. (See Tele. Conf. Tr. at 19:15-20:2, Def.

Exh. E.) Saint Vincent and the Creditors Committee, however, did not respond by briefing or

otherwise addressing the *res judicata* issue and, as discussed below, the Bankruptcy Court had

no occasion to alter its position that it would not decide the issue.

Saint Vincent did ask the Bankruptcy Court to issue an "interim" ruling as

opposed to a final ruling on the fee request because, as Saint Vincent explained, "courts have

held that **a final order approving fees** in a bankruptcy case can have preclusive effect on a

subsequent effort to assert affirmative claims against a debtor's counsel." (Saint Vincent Obj. ¶

52, Def. Exh. H (emphasis added).) Saint Vincent requested that the Court issue an "interim" fee

ruling precisely because courts had consistently held that a final fee judgment issued by a

bankruptcy court on a lawyer's application for fees was *res judicata* as to any claim arising out of

the lawyer's representation of the debtor. (See Def. Mem. at 32-33 (citing cases).) The

11

Bankruptcy Court rejected Saint Vincent's request and determined that it would treat the fee application as a final fee application and issue a final fee order, which it ultimately did. (July 21, 2006 Notice of Amendment at 2, Def. Exh. F.)

In its Fee Decision, the Bankruptcy Court denied Saint Vincent's request that the amount of fees awarded to MWE be reduced by the amount of consequential damages purportedly suffered by Saint Vincent in connection with the St. Mary's Hospital closure and the motions to retain Huron and SWLLC. (Fee Decision at 35-36, Def. Exh. Y.) The Bankruptcy Court concluded that it would be inappropriate to constructively award Saint Vincent and the Creditors Committee consequential damages because Saint Vincent had failed to pursue an appropriate claim for affirmative relief which would justify such an award. (See id. at 36.) The Court specifically stated that it was denying Saint Vincent's claim because consequential damages could not be quantified "on the trial record," and that its denial was "without prejudice to the debtors' right to assert such damages **in an appropriate malpractice action or proceeding**." (Id. at 35-36 (emphasis added).) The Bankruptcy Court then issued its Fee Order which confirmed and implemented its Fee Decision:

> ORDERED, that the award of **final compensation** to MWE as set forth in this Order is without prejudice to: (a) **any rights** of the Litigation Trust and the Litigation Trustee [ ] to assert claims and causes of action against MWE for consequential damages resulting from (i) delay in closing St. Mary's Hospital, (ii) the pursuit of bankruptcy retentions of Speltz & Weis LLC and Huron Consulting Services LLC, and (iii) the CRO/CFO selection process, including claims for legal fees paid to Weil, Gotshal & Manges LLP and counsel for the Committee; and (b) **the right of MWE to assert any applicable defenses** to all such claims and causes of action. (**Any** such claims and causes of action described in the preceding sentence are hereby preserved for the Litigation Trust and the Litigation Trustee[].) (Fee Order at 3-4, Def. Exh. Z (emphasis added).)

The Fee Decision and Fee Order reflect the Bankruptcy Court's determination—as announced during the July 20, 2006 conference—that the Court could not and would not determine Saint Vincent's entitlement to malpractice damages or MWE's entitlement to preclusion. Even though the Bankruptcy Court opined that "there can be no doubt that the debtors suffered a large loss as a consequence of [MWE]'s delay in filing the motion"[5] (Fee Decision at 35, Def. Exh. Y), the Court was unwilling to rule affirmatively that a malpractice claim survived the final Fee Judgment. Instead, the Court left MWE free to assert its *res judicata* defense in any subsequent malpractice action by ruling that "any rights" to assert a malpractice claim against MWE would be subject to "the right of MWE to assert any applicable defenses to" such a claim. (Fee Order at 3, Def. Exh. Z.)

The Litigation Trustee argues that, at the time the Bankruptcy Court issued the Fee Judgment, the Court "was acutely aware" of the reservation clause contained in the Reorganization Plan. (Pl. Opp. at 37.) However, at the time it ruled on MWE's final fee application, the Bankruptcy Court was also aware that the parties had disputed the *res judicata* effect of the Fee Judgment. The Court had already indicated that it was unwilling to resolve the dispute in the absence of briefing and argument by the parties. If the Bankruptcy Court had nevertheless determined to rule on the disputed *res judicata* issue, it would have done so explicitly. There is no reason to conclude that the Bankruptcy Court took the time and effort required to issue a 37 page decision that ruled, *inter alia*, on an issue as complex as *res judicata*

---

[5] The MWE Defendants do not concede that this conclusion is either correct or necessary to the Bankruptcy Court's ruling on the Fee Application.

without even pausing to mention the words "*res judicata*" or "preclusion," or the fact that the

parties disputed it.

The Fee Judgment simply did not resolve the MWE Defendants' *res judicata*

defense, and it was explicitly "without prejudice to . . . the right of MWE to assert any applicable

defenses to all such claims and causes of action," including *res judicata*.

**B.    The Bankruptcy Court Could Not Limit the *Res Judicata* Effect of the Fee Judgment**

       **1.    The Second Circuit Has Held That Bankruptcy Courts Are Powerless To Limit the *Res Judicata* Effect of Their Own Judgments**

The Second Circuit has specifically held that, outside of the context of

reorganization plans in which Congress has specifically authorized bankruptcy courts to reserve

enumerated claims, a bankruptcy court lacks the authority to prevent the operation of *res

judicata* by setting aside or preserving particular claims. In <u>Sure-Snap Corp. v. State Street Bank

and Trust Co.</u>, 948 F.2d 869, 873 (2d Cir. 1991), the Second Circuit explicitly held that a

bankruptcy judge's express reservation of claims during the court's discussion of an order it

entered from the bench in no way prevented *res judicata* from barring the purportedly reserved

claims. <u>Id.</u> at 872-73. The Litigation Trustee attempts to distinguish the reservation language

used by the court in <u>Sure-Snap</u> from the "without prejudice" language in the Fee Decision and

Fee Order, asserting that the two cannot be "equate[d]." (<u>See</u> Pl. Opp. at 39-40.) The Litigation

Trustee's attempt to distinguish the instant case from <u>Sure-Snap</u> would have the effect of creating

a magic words test in which the phrase "without prejudice" as used by the Bankruptcy Court in

this case has a meaning that is entirely different from the judge's statement from the bench in

<u>Sure-Snap</u> that his order is premised on his view that the order will not preclude certain claims.

Further, the Litigation Trustee's attempted distinction is inconsistent with the

Sure-Snap court's reasoning: the Second Circuit compared the reservation made on the record in

Sure-Snap to an express reservation clause contained in a formal court order. Sure-Snap, 948

F.2d at 873 (finding that the reservation made on the record in Sure-Snap was analogous to an

express reservation contained in a court order). The reasoning of the Sure-Snap court makes

clear that it found the reservation made in open court to be ineffective because the court lacked

the authority to establish the preclusive effect of its own order.

The Litigation Trustee's attempt to distinguish Sure-Snap from the instant case

also fails because, in a subsequent decision that the Litigation Trustee fails to address, the

Second Circuit again held that a court lacks the authority to determine the *res judicata* effect of

its own judgments even if the court attempts to do so in a formal judgment: "[O]rdinarily, both

issue preclusion and claim preclusion are enforced by awaiting a second action in which they are

pleaded and proved by the party asserting them. The first court does not get to dictate to other

courts the preclusion consequences of its own judgment." Covanta Onondaga Ltd. P'ship v.

Onondaga County Res. Recovery Agency, 318 F.3d 392, 397-98 (2d Cir. 2003) (internal

quotation marks omitted).

Two other circuits have reached the same conclusion as the Second Circuit in

holding that, outside of the context of the reorganization plan in which Congress has specifically

authorized bankruptcy courts to reserve enumerated claims, bankruptcy courts lack the authority

to set aside or preserve a claim that would ordinarily be barred by *res judicata*. Thickstun Bros.

Equip. Co. v. Encompass Serv. Corp. (In re Thickstun Bros. Equip. Co., Inc.), 344 B.R. 515,

519-20 (6th Cir. 2006) (bankruptcy court lacks jurisdiction to determine the preclusive effect of

its own order); Midway Motor Lodge of Elk Grove v. Innkeepers' Telemgmt. & Equip. Corp., 54

F.3d 406, 409 (7th Cir. 1995) (bankruptcy court cannot determine its own judgment's effect; the

second court is entitled to determine the *res judicata* effect of the first court's judgment).

> **2.  The Cases Cited by the Litigation Trustee Do Not Permit the Bankruptcy Court To Limit the *Res Judicata* Effect of Its Own Judgment**

The Litigation Trustee cites two cases from outside the Second Circuit that

purportedly support the proposition that a court has the authority to limit the *res judicata* effect

of its own judgments.[6]  (See Pl. Opp. at 35-36.)  But these two cases are inconsistent with the

Second Circuit's decisions in Sure-Snap and Covanta and are distinguishable from the instant

case in any event.  In In re Palumbo Family Ltd. P'ship, 182 B.R. 447 (Bankr. E.D. Va. 1995),

the court held that *res judicata* did not bar a sanctions proceeding where (1) the court specifically

bifurcated a fee and sanctions proceeding into two phases and (2) there was no determination

that the order resolving the first phase of the proceeding was a final order.  Id. at 462.  Similarly,

in Apparel Art International, Inc. v. Amertex Enterprises Ltd., 48 F.3d 576 (1st Cir. 1995), the

court held that *res judicata* did not preclude claims that had been pending in two parallel actions

where one court dismissed the claims pending before it so that the claims could be pursued in the

other action.  Id. at 585-86.

---

[6] The Litigation Trustee conflates cases that address two entirely separate types of express reservations. First, the Litigation Trustee cites cases which hold that a reorganization plan confirmed by a bankruptcy court is not *res judicata* as to claims that are specifically and expressly preserved by the reservation clause.  As discussed above, 11 U.S.C. § 1123 specifically authorizes courts to include such reservation clauses in reorganization plans.  Second, the Litigation Trustee cites cases which purportedly support the proposition that any court can suspend the *res judicata* effect of any judgment with an express reservation.  This proposition is flatly contradicted by the Second Circuit's decisions in Sure-Snap and Covanta, and the cases cited by the Litigation Trustee purportedly holding the opposite are discussed in this section.

Both In re Palumbo and Apparel Art are distinguishable from the instant case because those cases involve decisions by trial courts bifurcating or otherwise dividing the litigation of claims and issues between different phases of the same action and/or different pending actions. Neither of these decisions involves a trial court limiting the *res judicata* effect of its judgment in such a manner that permits a plaintiff to litigate an initial action to judgment and subsequently file a new and separate second action based on the same transaction.[7]

### 3.    The Policy Rationale for the *Res Judicata* Doctrine Precludes Case-Specific Exceptions to the Doctrine

In addition to being firmly rooted in the case law, the conclusion that the instant case is barred by the doctrine of *res judicata* furthers the policy and rationale supporting a doctrine that is at the very heart of this country's civil justice system. In Federated Department Stores, Inc. v. Moitie, 452 U.S. 394 (1981), the Supreme Court held that the doctrine of *res judicata* must be applied uniformly and that individual judges may not exempt a particular party or claim from the effects of *res judicata* in order to meet the needs of "public policy." In Moitie, the Court of Appeals had refused to apply *res judicata* given the unusual factual circumstances of that particular case, concluding that "the doctrine of *res judicata* must give way to 'public policy' and 'simple justice.'" Id. at 398. The Supreme Court reversed:

> But we do not see the grave injustice which would be done by the application of accepted principles of *res judicata*. "Simple justice"

---

[7] The Litigation Trustee also asserts that it would be inequitable to find the instant claims to be barred by *res judicata*, attempting to analogize the instant case to Parker v. Blauvelt Volunteer Fire Co., Inc., 93 N.Y.2d 343, 690 N.Y.S.2d 478 (1999). Parker is inapposite because in that case the court in which the earlier action was pending lacked the jurisdiction and authority to hear the claims that were being asserted in the second action. See id. at 347 (pursuant to C.P.L.R. § 7806, the first court did not have jurisdiction to hear damages claims during an Article 78 proceeding because the damages claims were not "incidental to the primary relief sought of reinstatement as a firefighter."). See id. at 347. Parker stands for nothing more than the proposition that *res judicata* does not bar claims that could not have been brought during an earlier action. Id.

is achieved when a complex body of law developed over a period of years is evenhandedly applied. **The doctrine of *res judicata* serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*.** The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We have stressed that the doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts. Id. at 401-2 (emphasis added; internal quotation marks omitted).

The Court continued to cite another of its decisions and explained that "[t]he language used by this Court half a century ago is even more compelling in view of today's crowded dockets":

"The predicament in which respondent finds himself is of his own making. . . . [We] cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata*, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation – a maxim which comports with common sense as well as public policy. **And the mischief which would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship.**" Moitie, 452 U.S. at 401-2 (quoting Reed v. Allen, 286 U.S. 191, 198-199 (1932)) (emphasis added; internal quotation marks omitted).

See also Albenga v. Ward, 635 F. Supp. 660, 665 (S.D.N.Y. 1986) (even though earlier action was "wrongly decided on both the facts and the law, and the result reached therein was inequitable," the second action was barred by *res judicata* because "[m]y view of the equities [ ] cannot justify a refusal to apply the principle of *res judicata* to plaintiff's claim"); Shaw v.

18

Replogle (In re Shaw), No. C. 00-2820 CRB, 2000 U.S. Dist. LEXIS 18745, at *20-21 (N.D.

Cal. Dec. 22, 2000) (fee application of debtor's attorney was *res judicata* as to debtor's

subsequent malpractice action even though there was a material question of fact as to whether

attorney committed malpractice) (cited at Saint Vincent Fee Appeal Br. at 4, 14).

The doctrine of *res judicata* is not a mere technicality; it is a crucial tenet of

substantive justice that protects increasingly taxed judicial resources and guarantees to parties

that the economic and emotional costs of litigation will end with a final judgment.[8] This is

particularly true in this case where, at the time of the fee dispute, Saint Vincent and the Creditors

Committee had competent counsel (including Venable LLP, which had been retained for the

specific purpose of identifying malpractice claims against the MWE Defendants), were aware of

the relevant facts, were advised that any claims not raised during the fee dispute could be barred

by *res judicata*, and actually conducted discovery and tried claims arising out of the same

transaction without asserting some of the instant claims. The Litigation Trustee now wants a

second bite at the apple which would in no way achieve substantive or procedural justice;

instead, it would impose duplicative and unnecessary litigation costs on **all** parties and waste

judicial resources.

---

[8] See Sure-Snap, 948 F.2d at 876 ("Restraining litigious plaintiffs from taking more than 'one bite of the apple' has been our avowed purpose since the common law doctrine of *res judicata* first evolved. . . . "[T]he doctrine of *res judicata* serves important interests other than protecting parties from inconsistent judgments, including relieving parties of the cost and vexation of multiple lawsuits [and] encouraging reliance on adjudication[.]") (internal quotation marks omitted); Schmieder v. Hall, 545 F.2d 768, 771 (2d Cir. 1976) ("*Res judicata* is a principle of peace. We cannot underestimate the importance of repose to parties. . . . But we must also attach fundamental significance to the interest of society and the courts in the final resolution of disputes. The explosion of federal dockets in recent years is so notorious as to require no comment. Judicial resources today are an increasingly scarce commodity, and it is of the utmost importance that litigants use them wisely.") (internal quotation marks omitted).

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed.

Dated: New York, New York
      July 17, 2008

                    /s/ Frederick B. Warder III
                    Frederick B. Warder III
                    Evan Mandel
                    PATTERSON BELKNAP WEBB &
                        TYLER LLP
                    1133 Avenue of the Americas
                    New York, New York  10036
                    Tel:  (212) 336-2000
                    Fax:  (212) 336-2222

                    Attorneys for Defendants McDermott Will &
                    Emery LLP, William P. Smith, Stephen B. Selbst
                    and David D. Cleary